UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOMS AGAINST MERCURY, *et al*., ) | |
| Plaintiffs, ) | Case # 1:07- |
| v. ) | cv002332-ESH |
| Andrew von ESCHENBACH, Commissioner, Food and Drug ) | |
| Administration; *et al.*, ) | |
| Defendants. ) | |

*Plaintiffs' Reply to Opposition, Motion for Preliminary Injunction:*
Defying Its Duty To Classify Mercury Fillings for a 32nd Year, FDA
Refuses To Offer the Court Even a Timetable To Finish

FDA admits (a) it must classify all devices (*Defendants' Brief. at 4*); (b)

encapsulated mercury amalgam is a device (*Def. Brf. 1*), which (c) it has never classified

(*Def. Brf. 1*). Other government agencies might apologize for being in a 32-year default

of compliance with the law – especially concerning a controversial device composed 50%

of a virulent neurotoxin. Other government agencies would be embarrassed when two of

its official Scientific Advisory Committees vote 13 to 7 against the staff position that the

device is safe, and even voted 13 to 7 to condemn the staff's methodology. Other

government agencies likely would proffer to this Court a timetable to get into compliance

with the law.

Not FDA. The philosopher-kings in Rockville say they alone determine agency

"priorities" – not the Food, Drug, & Cosmetic Act; nor Congress, nor the Courts, nor the

scientists. Not only do defendants fail to proffer a timetable – they **never even promise**

**the Court FDA will finish at all**. Nonetheless, says FDA, this Court is powerless to

order a meaningful remedy.

These omniscient defendants even know the motivation of all eleven plaintiffs –

it's "an  extreme dislike for mercury" (*Def. Brf. 2*). That persons losing babies in the

womb, having brain-damaged children, being confined to a wheelchair for decades,

becoming disabled and hence unable to work at their licensed skill as a dental assistant, or having chronic bad health – each time because of mercury exposure from amalgam in their mouths or in their workplaces – would actually have an "extreme dislike for mercury" is clearly an annoyance to these grandiose policymakers.

Thirty-two years of concealing the mercury exposure from pregnant women – and today, sadly, that generally means low-income, minority, and military women[1] – does not tweak the consciences of these defendants one whit.  Here is how FDA sloughs off the findings of the two FDA Scientific Advisory Committees:

> "[M]ercury in dental amalgam **may have adverse side effects on certain subsets** of individuals, such as **pregnant women** or those with hypersensitivity to mercury." (Def. Brf. 13).

Relegated to **subset** status, pregnant women and their unborn babies are sacrificed for the "benefit" of the majority.[2]  Equally egregious, FDA balances the scales against the victims surreptitiously; the 2006 Zogby poll[3] found that over 75% of consumers still don't know that amalgams' main component is mercury.  FDA's golden silence over three decades, on behalf of the mercury amalgam manufacturers, keeps it that way.

By adopting a one-size-fits-all-of-us (no warnings for pregnant women), is the Center for Devices and Radiological Health stuck in a  time warp?  Mercury amalgam is a primitive 19th century device, and FDA adopts a 19th-century view of the law, tossing pregnant women and unborn children under the bus on a survival-of-the-fittest theory, an approach as outrageous today as at its zenith a century ago.[4]

---

[1] *http://www.mercurypoisoned.com/hearings/carlton_statement.html*
[2] The panel also raised major concerns for children, but since they by law may not contract to pay for services, they get excluded from FDA's cost-benefit analysis.
[3] *http://www.zogby.com/search/ReadClips.dbm?ID=12662*.
[4] *Lochner v. New York*, 198 U.S. 45 (1905).  Justice Holmes, dissenting, at pp. 75 *et seq*., says the Constitution does not incorporate "Mr. Herbert Spencer's" Social Darwinism.

Other FDA Centers have issued warnings at the drop of a hat – e.g., its instant warning about toothpaste from China earlier this year.  <u>Rather than take one afternoon to write a warning to pregnant women and parents about mercury from amalgam, FDA's "priority" is to do literature reviews (three times) and public comments (three times).</u> Bizarrely, FDA asked for public comment in April, then admits it is still reading the comments it received in 2006.  The Court should be able to deduce the motives of such shenanigans.[5]

Federal and world health agencies share that "extreme dislike for mercury" which the Center for Devices finds so annoying in the eleven  plaintiffs.  These mercury-haters include the U.S. Centers for Disease Control, *http://www.cdc.gov/exposurereport/* (amalgam is "a major source of mercury"); the U.S. Public Health Service,

*www.atsdr.cdc.gov/toxprofiles/tp46.html* (the two major sources of mercury in Americans are dental fillings and diet); the World Health Organization,

*www.inchem.org/documents/cicads/cicads/cicad50.htm* (no safe level of mercury exposure exists) – and all the other Centers at FDA itself!  When it comes to mercury, FDA's other centers operate 180 degrees from the rogue Center for Devices and Radiological Health.

- FDA's Center for Veterinary Medicine bans mercury from every single veterinary drug, and even recalled Miracle Leg Paint II, a lotion that went on horses' legs, after discovering it had mercury.  *www.fda.gov/oc/po/firmrecalls/equine05_02.html*. *N.B.*: The veterinarian center acted immediately.  Unlike the Center for Devices, it did no cost-benefit analysis to see if low-income consumers can still buy lotions for their horses; nor did it do literature reviews on whether mercury is toxic; nor did it open 90-day comment periods to get a vote on whether to recall the product.

- FDA's Center for Food Safety and Applied Nutrition shows that same "extreme dislike for mercury" that marks every part of FDA except the Center for Devices;

---

[5] FDA's brief portrays an operation operating like a Congressional office: receive and answer mail, then weigh which side has more clout.  The problem starts at the top, a Commissioner who operates under a benign neglect theory of leadership, who refuses to blow the whistle on the malfeasants below.

it warned that pregnant women and children avoid tuna and other fish with high mercury levels.

- FDA's Center for Drug Evaluation and Research banned Mercurochrome, a mercury-based disinfectant, a full generation ago.

Standing alone in the public health community in its defense of mercury – even standing alone within FDA itself – the Center for Devices' abject callousness toward mercury exposure to pregnant women, unborn children, and young children shocks the conscience.

FDA's inaction is even more unacceptable because the agency admitted to the United States Court of Appeals, fifteen months ago, that it does not know if mercury fillings are safe or unsafe. FDA disingenuously claims its admissions about mercury amalgam were "taken out of context." Five times? To the second highest court in the nation?[6] That FDA refuses to say what it really meant suggests that FDA has been forced to change its tactics to protect its nonfeasance. In the previous case by these plaintiffs, in 2007, FDA's goal focused on getting the case dismissed; hence, it said it was studying the issue. This time, in 2008, it must avoid the ignominy of being ordered to take a product out of commerce because of its abysmal failure for 32 years to classify it; hence it retracts last year's story and creates a new one.

---

[6] Here are the five quotations from FDA's brief to the Court of Appeals in the first *Moms Against Mercury v. FDA*. We leave it to the District Court to decide if they are taken out of context; FDA's brief is at *www.toxicteeth.org/momsbrief-final.pdf*:

- "there is a lack of conclusive evidence regarding the health effects of mercury fillings" (FDA brief, p. 18);
- "constantly changing scientific evidence" exists on mercury amalgam (*Id.*, p. 39);
- "complex issues and intense disagreement [exist] about the scientific evidence regarding mercury and its potential health effects" (*Id.*, pp. 40-41);
- "the complexity of the issue and the lack of conclusive scientific evidence on the health effects of dental amalgams" (*Id.*, p. 41);
- "the lack of … definitive scientific evidence." (*Id.*, p. 41).

A Supreme Court ruling a month ago should lead to a higher level of judicial scrutiny to the workings of the nearly invisible Center for Devices.  In *Riegel v. Medtronic*, 128 S.Ct. 999 (2008), the Court held that injured consumers may not sue a manufacturer for damages if the device had Pre-Market Approval by FDA.  The opinion premises that FDA is providing the highest level of expertise to the product.  For encapsulated mercury amalgam (which, to be clear, did not enter the market via pre-market approval), no such scientific expertise was applied.  In fact, FDA's scientists voted in 2006 that FDA's dentist-determined "amalgam is safe" position is incorrect.

## FDA's Scheme To Avoid Classifying

Three times, in 1993, 1997, and 2002, while under heat to classify, FDA did a "literature review."  Three times, in 2002, 2006, and now again in April 2008, FDA sought "public comment."   Five times, at least, in 1997, in 2002, in 2005, and twice in 2007, FDA promised in writing or in sworn testimony to classify.  The Center's protectionist policy for amalgam has been rejected by FDA's scientists in 2002.  It has been challenged by Congress in 2002, 2005, 2006, and 2007.  It dodged bullets twice in cases before the Court of Appeals, in 1993 and 2007.  **FDA is not in the process of classifying mercury amalgam; FDA's rogue bureaucracy is engaged in a decades-long ruse**.

The Devices amendments were signed into law by President Ford.  Under President Carter, FDA's Commissioner ruled that dental fillings are implants.  Under President Reagan, FDA's Commissioner classified all dental filling materials but one,

encapsulated mercury amalgam.[7]  Then all progress ceased.  For two decades and running

the protectors of mercury fillings at the Center for Devices have engaged in a round robin

of news releases, literature reviews, public comments, consumer alerts – all smoke and

mirrors to fake out the public and their superiors.

Meanwhile, false promises to classify came and went.  To avoid litigation, they

made written promises to the undersigned counsel: to attorney Reeves in 1997 to classify,

and to Mr. Brown in 2007 to issue an Advanced Notice of Proposed Rulemaking (the

latter promise caused plaintiffs to delay filing this lawsuit for six full months).  Facing an

exasperated House oversight committee in 2002, Center Director David Feigal promised

Chairman Burton that FDA would classify amalgam.  En route to securing confirmation

as Commissioner in 2005, Dr. Lester Crawford promised Senator Kennedy in 2005 that

FDA would classify amalgam.  En route to securing confirmation as Commissioner in

2006, defendant Von Eschenbach promised Senator Enzi that the two FDA Scientific

Advisory Committees would be asked to "answer specific questions concerning any

possible adverse health effects of dental amalgam"; that promise too was false.

A Class II device must have Special Controls.  <u>In a cruel move, FDA proposed</u>

<u>Special Controls in 2002 to block consumer information about the mercury</u>; it remains

FDA's proposal today.  FDA seeks to obliterate state Fact Sheet laws requiring disclosure

of the mercury (see, e.g., Maine's fact sheet,

---

[7] Defendant Mary Susan Runner claimed in 2002 that the failure to classify mercury
amalgam was "inadvertent," a point quoted in the government brief.  At a House hearing in
November 2002, Chairman Burton asked Runner's boss, then Center for Devices Director
David Feigal, if that was true.  Feigal said no, that no evidence exists that the exclusion of
amalgam was inadvertent.  (Hearing before the Committee on Government Reform, Nov. 14,
2002, "Mercury in Dental Amalgams," Serial No. 107-159, _www.house.gov/reform_).  Even if it
was inadvertent, though, it does not excuse FDA for failing to classify under the five
presidential terms combined of Presidents Bush, Clinton, and Bush.

*www.state.me.us/dhs/boh/files/odh/AmalBrochFinal2.doc* ), and do the same with

manufacturer warnings (see *Barnes v. Kerr Corp*., 418 F.3d 583 (6th Cir. 2005)).  In its

place, FDA cynically introduced zinc as the culprit, even though zinc is a nutrient, not a

toxin.  FDA's draft Special Controls, *www.fda.gov/cdrh/ode/guidance/1192.pdf*, require this

one, and only, warning, in large print:

> "THIS PRODUCT CONTAINS ZINC; THE AMALGAM MADE
> FROM ZINC MAY SHOW EXCESSIVE EXPANSION IF
> MOISTURE IS INTRODUCED DURING MIXING OR
> COMPACTING"

Such a reprehensible feint constitutes proof-positive that the Center for Devices acts as

protectors of dental manufacturers, not of consumers.  Plainly, defendant Commissioner

Von Eschenbach and defendant Deputy Commissioner Lutter do not supervise, do not

demand accountability, and provide no check on such outrageous proposals; FDA leaders

reign but do not rule.

## The 2002 Draft Rule Sits in Regulatory Equipoise

To classify with honest Special Controls (i.e., warning of the mercury, a

neurotoxin, not of the zinc, a nutrient), means, by common agreement, the beginning of

the end of mercury fillings.  What parent or young woman would knowingly allow

mercury implanted in their mouths?  To end the 150 years of dentistry's foundation-stone

is a bridge too far for the dentist-regulators, so inertia reigns at the Center for Devices.

So in the fine print – the Special Controls – FDA seeks not only to block

disclosure of the mercury but stop anyone else from disclosing it via its uniform warning

of zinc, a nutrient.  Nowhere is zinc discussed in the proposed regulation; then like

Athena, zinc emerges full-grown in the Special Controls as a warning with nary a factual

underpinning.  The entire focus of the rule is mercury's toxicity, which – like a half

dozen of Odysseus' men sailing near Scylla – disappears from view when it comes time for Special Controls like contraindications and warnings. Surely, FDA lawyers know that FDA's Special Controls would be dead on arrival on judicial review. So the Center's patently illegal proposal stays in play for six years, hanging in regulatory equipoise but never finalized.

The old-fashioned dentists (that dwindling share of the dental profession dedicated to holding onto mercury) remain in charge at FDA. The Center rejected a petition by plaintiff Consumers for Dental Choice to shift regulatory control to toxicologists (*Def. Brf. fn 6*). Tragically for dentistry, it moved the opposite direction in the 20th century from medicine, which – pushed by such mercury critics as poet-physician Oliver Wendell Holmes Sr. – generally shed itself of mercury products a century ago. Tragically for unborn children and young children in this country who should at all costs not be exposed to mercury, FDA's inert leadership digs in and defends, rather than corrects, decades of nonfeasance by the Dental Devices bureaucracy.

This current comment period, strung out, allows FDA to put off action for 2008, and perhaps 2009 as well. (1) The 90 days gets FDA to mid-summer. (2) FDA then "studies" the comments, which predictably will remain highly negative of amalgam. Since FDA admits in its brief that it is <u>still</u> studying the 2006 comments, this process will at least consume the calendar year. (3) In January 2009 FDA will kiss good-bye a <u>sixth</u> President since being required to classify encapsulated mercury amalgam. (4) Then the Center for Devices can burn more months in briefing a new Commissioner on the wrongheadedness of those thousands of consumers, health professionals, and scientists who inexplicably have that "extreme dislike for mercury."

### The Court Has the Authority to Grant the Requested Relief

Twice in the past two years, this Circuit has overturned a government agency who cavalierly disregards both its legal duty and the impact of mercury on human health and the environment: *New Jersey. v. Environmental Protection Agency*, 517 F.3d 574 (D.C. Cir. 2008); and *New York v. Environmental Protection Agency*, 443 F.3d 880 (D.C. Cir. 2006). These cases provide ample authority for the Court to act.

The Court's equitable powers certainly include the authority to take out of commerce a device that FDA refuses to classify, since Congress has determined that devices must be classified to be in commerce. For devices coming onto the market after 1976, classification (and substantial equivalence) must precede the sale of the device. For devices on the market before 1976, Congress gave FDA a grace period to classify. The grace period, not designated in length, does not run forever; FDA must roll up its sleeves and classify all of them. In the case of dental filling materials, FDA completed its work by 1987, even on filling materials hardly ever used – with one exception, the subject of this litigation.

FDA argues that even if plaintiffs could meet the standard for a preliminary injunction, removal of mercury amalgam from the market is not an available remedy; rather, FDA contends that under the APA, plaintiffs only remedy is for the Court to "compel agency action." A plain reading of 5 U.S.C. §702 suggests otherwise:

> "Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other <u>appropriate legal or equitable ground</u>." (*Emphasis added*.)

Nothing in the APA suggests that the "compel" language in §706 does anything to constrain this Court's equitable discretion. Indeed, this Circuit recognizes that relief

outside of that specified in the APA is available; *Sanchez-Espinoza v. Reagan,* 770 F. 2d. 202, 208 (D.C.Cir.1985). Because mercury amalgam is on the market illegally, without any special controls, it should be temporarily removed from commerce pending its classification.

Plaintiffs propose the Court hand the choice on how to respond to an injunctive order to FDA. For example, the Court could order FDA to choose, by June 16 (in 30 days), either (a) to classify encapsulated mercury amalgam (if as a Class II, as FDA predicts, then Special Controls must be included or it is not properly classified); or (b) to remove the device from commerce until FDA classifies it. <u>FDA makes the choice: to comply with the FDCA, or to order out of commerce a device it chooses not to classify</u>.

## Likelihood of success on the merits is overwhelming

(A) <u>FDA is violating the law requiring the classification of all devices; FDA will therefore lose on the merits.</u>

On the merits, the case is straightforward: FDA's brief admits to all elements necessary for a finding that FDA is violating the legal requirement to classify amalgam:

1) FDA has a duty to classify all devices;

2) Encapsulated mercury amalgam is a device;

3) Encapsulated mercury amalgam is not classified.[8]

FDA claims it keeps a close watch over the device via other means.[9] Not so.

FDA approves this device which is 54% mercury under a regulation for <u>a device that is</u>

---

[8] FDA raises a red herring by saying amalgam is not "formally classified," suggesting a halfway status between "classified" and "unclassified." The Food Drug and Cosmetic Act has no category for "sort of classified." A device not classified is a device unclassified.

[9] Contrary to the government claim, the Court of Appeals indeed did condemn FDA's current approval system. In hoping to gloss over what the Court said, the government conveniently omitted the Court's language. We concede it is dicta, but bring it the District Court's

<u>defined as having no mercury.</u>  **Since it has no mercury, no Special Controls exist to
address protecting the patient or the dental worker from the mercury**.  (The mercury
bottle is a Class I, so by definition has no Special Controls.)[10]  Thus, FDA's repeatedly
advising this Court that amalgam is now subject to Special Controls is a false claim.

(B) <u>FDA is more than delaying unreasonably – FDA's agenda is not to classify</u>.

FDA doesn't have a go-slow approach; FDA has a go-in-circles approach.  Every
time the agency faces heat from the Senate, the House, the courts, the press, or the public,
it resorts to the facially plausible diversion of a literature review or a public comment
period.  But it has now done each of these three times!  In between, two FDA panels of
scientists rejected amalgam use for pregnant women, children, and the hypersensitive.

The issue of unreasonable delay – one of several routes for a success on the merits
for plaintiffs – is addressed at greater length on pp. 5-7, *supra* ("FDA's Scheme To
Avoid Classifying") and in the Opposition to Motion to Dismiss, Part II (an entire section
on the issue).

Irreparable injury exists to plaintiffs

1. Plaintiff Crowe, a dentist, has had two grotesquely deformed fetuses out of
three pregnancies; the live birth, a little boy, has five times the mercury level that is

---

attention to show that FDA's braggadocio about "effectively regulating" did not impress the
Court of Appeals: "EAADM has not been --- and indeed, as a pre-amendment device, could
not be --- subject to any order deeming it substantially equivalent to a pre-amendment
device."

[10] The old pharmacists' system, where the dentist mixes the amalgam, is gone, long gone.  A
decade ago the American Dental Association House of Delegates voted to direct all dentists
to discontinue its use, which most dentists had already done.  The mixing system is banned in
several states, such as New York and Connecticut.  It is doubtful that one dentist in a
thousand still uses it.  FDA's Special Controls over use of a powder non-mercury alloy are
virtually zero.  FDA recently approved the encapsulated amalgam Silverfil with no
restrictions, even though the applicant-manufacturer advised it is banned for children and
pregnant women in its home base, the United Kingdom.

acceptable.  The chances of such deformities happening twice is so rare that she and her husband had comprehensive testing, and were found to be normal.  A later diagnosis attributed it to mercury exposure in the womb.  The major source of her mercury exposure is from the dental clinic where she worked; she did not implant mercury fillings, but the other dentist did; mercury is of course highly vaporous.

Dr. Crowe is of childbearing age, and takes a gigantic risk for having another pregnancy.  She has had to return to work in the most toxic-free work environment she could find, migrating 1000 miles away from home.  But as long as a large number of patients enter the dental workplace with mercury fillings, that risk remains.  A decline in the use of mercury fillings, which would begin immediately after virtually any serious FDA classification – as well as heightened public awareness resulting in occupational safety standards, warnings, insurance coverage changes, and stricter hazardous materials controls – is her only hope of regaining her health and becoming mercury-free in her body, and of having another pregnancy.

Clearly Dr. Crowe meets the irreparable injury standard.

2. Plaintiff Linda Brocato is a victim of mercury toxicity.  She was diagnosed with multiple sclerosis, which is supposed to regress and never be subject to improvement.  She got her mercury fillings removed, and had a substantial recovery, to the point that she lives independently, but she remains unable to walk and does not have full arm control.   Her continued improvement now depends on whether mercury toxicity, from amalgam, becomes mainstreamed into health care, so the top medical institutions will combine their current treatment procedures with detoxification remedies.

3. Plaintiff Connecticut Coalition for Environmental Justice has a membership composed of low-income residents of that state (plus higher-income persons who support their causes).  As long as FDA's *sub silentio* policy remains "choice for the rich and mercury for the poor," a term the NAACP witness used at a Congressional hearing in 2002, members of said Coalition for Environmental Justice will receive mercury fillings, putting unborn children and children at unnecessary risk of mercury toxicity.  To reiterate, an honest classification will doom mercury fillings, because organized dentistry's "silver fillings" deception will come unmasked.

4. Plaintiff Michael Bender is involved in setting the mercury policy for his state, Vermont, due to his official position.  Waiting a year to get FDA to act means harm to the state's environment due to unnecessary mercury use, and wrong state policies that cannot easily be corrected.

5. Plaintiff Moms Against Mercury works to educate women to avoid mercury fillings, lest it cause neurological damage to their unborn or future babies, but like any nonprofit group, their advice lacks the credibility FDA has.  FDA silence about mercury in the fillings, and FDA inaction about classifying them, means more mercury-toxic mothers nursing their babies, and more children born mercury-damaged.  **For this year's damaged families, the harm is plainly irreparable**.

## Balance of equities favors protecting pregnant women

According to the EPA, one U.S. woman of childbearing age has so much mercury in her body she is at risk of having a brain-damaged child.  According to the CDC, mercury amalgam is a "major source" of mercury exposure.   Yet three-fourths of Americans, according to the Zogby poll, are not aware of amalgam's main component

(small wonder, given its purposeful nickname "silver fillings.")  FDA's golden silence on

behalf of the dental industry is having its impact – and it is horrid.

It is hard to imagine a more important equity than protecting women of

childbearing age from mercury exposure.  It remains unconscionable that FDA refuses to

advise young women that amalgam is mainly mercury, and that FDA refuses to write

every dentist about the issue.  Health Canada wrote every dentist in that nation asking

them to stop placing mercury fillings in children, pregnant women, and persons with

kidney disease, **twelve years ago**.

Medicine in this country may be two-tiered, but not by overt advocacy.  By

contrast, FDA defends a two-tiered system of dentistry: choice for the rich and mercury

for the poor.

Facing a health regulator who defiantly refuses to classify, a balancing of the

equities means getting mercury amalgam out of commerce.

## The public interest favors an injunction

If FDA is allowed to pick and choose which devices it will classify; if FDA

continues with "an extreme dislike for mercury" when in fish, disinfectants, or medicines

for horses and dogs, while being indifferent about its use in the mouths of humans; if

FDA decides its "priorities" in device enforcement do not include pregnant women and

children, public confidence in the agency will sour.  FDA will lose its status as the

world's gold standard for food, drugs, and cosmetics.  Producers of unsafe products will

live in less fear of FDA enforcement actions.  Now that *Riegel v. Medtronic* (p. 5, *supra*)

hands consumer protection from unsafe devices *en toto* to FDA, with no back-up

protection from state tort laws, FDA must be held to a strict standard of accountability.

14

Respectfully submitted this 8th day of May 2008


_____/ s /_____
Charles G. Brown, DC Bar #930-248        Robert E. Reeves, KY Bar # 57,358
316 F St., N.E., Suite 210                REEVES LAW OFFICE
Washington, DC 20002                      167 West Main St., Suite 1310
Telephone 202.544-6333, fax 202.544-6331 Lexington, KY 40507
charlie@toxicteeth.org                    Teleph 859-226-0700, fax 859-226-0711
                                          robertereeves@aol.com