IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOMS AGAINST MERCURY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:07-cv-02332 (ESH) |
| ) | |
| ANDREW VON ESCHENBACH, et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**INTRODUCTION**

Although plaintiffs assert that they "easily meet their burden of injury, causation, and redressability," Opp. at 1, they fail to do so, primarily because they ignore the relevant questions before the Court.  That is, they fail to make any plausible connection between the challenged conduct – the lack of a formal classification of encapsulated amalgam alloy and dental mercury ("EAADM") – and their alleged injuries, and they offer pure speculation about how classification would redress these injuries.  Despite the sympathetic nature of some of the alleged injuries, plaintiffs have presented nothing to this Court that remotely suggests these injuries were caused by the Food and Drug Administration ("FDA"), or that classification of EAADM would provide any redress.

In addition, plaintiffs have now largely cast their injuries as informational injuries, for which they have no standing because they have no legally enforceable right to the information that they seek.  For all of these reasons, the complaint should be dismissed for lack of standing. Even if the complaint were not dismissed on this basis, most of plaintiffs' claims must also be

dismissed for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING

Plaintiffs argue that "the existence of a statute itself may create a legal right, the invasion of which causes injury sufficient to create standing." Opp. at 3. However, in neither of the cases cited by plaintiffs for this proposition, Warth v. Seldin, 422 U.S. 490 (1975), and Linda R.S. v. Richard D., 410 U.S. 614 (1973), did the Court find standing. Moreover, plaintiffs do not identify a statute that creates in them a "legal right," and, as set forth in the government's initial memorandum, the case law is clear that the FDCA provides no private cause of action. See U.S. Mem. at 30.

More importantly, however, assuming there were a statute that gave plaintiffs such a "legal right," plaintiffs must still establish Article III standing. In Warth, the Court stated that even when "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules[,] . . . Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself. . . ." 422 U.S. at 501. See also Sierra Club v. Morton, 405 U.S. 727, 732 n.3 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions. . . .").

Plaintiffs – apparently attempting to find a "legal right" – cast their injuries as resulting primarily from a lack of information regarding EAADM: "Defendants FDA deprived each and every plaintiff herein of necessary notification about the actual device itself . . . . Without such notification of the *device's* hazards, *each* plaintiff, either by having had the device placed, or

2

having handled the device, or having had a duty to create statutorily mandated public warnings about the device, suffered injury by being unable to avail themselves of their right to informed consent – the right to be properly protected, through scientific classification, from a hazardous medical device." Opp. at 3-4 (emphasis in original).

Plaintiffs cannot invoke the jurisdiction of this Court to remedy an informational injury; they fail to cite any provision of the FDCA that confers a "legally enforceable right to information." Am. Farm Bureau v. EPA, 121 F. Supp. 2d 84, 99 (D.D.C. 2000). "Informational standing arises 'only in very specific statutory contexts' where a statutory provision has 'explicitly created a right to information.'" Id. at 97 (quoting Animal Legal Def. Fund, Inc. v. Espy, 23 F.3d 496, 502 (D.C. Cir. 1994)). Cf. Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982) (Section 804(d) of the Fair Housing Act "conferred on all 'persons' a legal right to truthful information abut availably housing.").

Nothing in the FDCA and FDA regulations governing devices provides the public with a right of action for disclosure against FDA. See Am. Farm Bureau, 121 F. Supp. 2d at 99 ("The [FDCA] does not confer a broad, legally enforceable right to information."); Ass'n of Am. Physicians & Surgeons v. FDA, 539 F. Supp. 2d 4, 15 (D.D.C. 2008) ("plaintiffs cite no authority for the proposition that the FDCA can support informational standing"). If the labeling of a product is false and misleading, FDA has full discretionary authority to take action to remedy that violation – not members of the public. See 21 U.S.C. § 337(a); Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 349 n.4, 352 (2001); Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996); Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 810-12 (1986); Heckler v. Chaney, 470 U.S. 821 (1985); see also U.S. Mem. at 30-31 (discussing grounds for dismissing

plaintiffs' claims that EAADM is adulterated and misbranded). Because plaintiffs have failed to identify an explicit legally enforceable right to information under the FDCA, their informational standing allegation is unsustainable as a matter of law. Am. Farm Bureau, 121 F. Supp. 2d at 99; Ass'n of Am. Physicians & Surgeons, 539 F. Supp. 2d at 15.

Plaintiffs cannot use the power of this Court to compel FDA to disseminate information about FDA-regulated products, or to impose their preferences for the content of a label of an FDA-regulated product. Similarly, plaintiffs are not legally entitled to any particular warnings regarding mercury that FDA may impose when it completes its classification process. Nor do plaintiffs cite any enforceable requirement that FDA must disseminate information about dental amalgam. Thus, plaintiffs lack standing to bring claims of informational injury. In addition, plaintiffs have also failed to carry their burden to demonstrate that jurisdiction exists for any other allegations of injury, as discussed below.

A.    THE INDIVIDUAL PLAINTIFFS LACK STANDING

1.    PLAINTIFF MICHAEL BENDER

Plaintiff Michael Bender, a member of the Vermont Advisory Committee of Mercury Pollution, bases his theory of standing on an asserted informational injury. Mr. Bender alleges that he has standing because FDA's actions have "impacted directly on his work," which requires him to "make recommendations about the major sources of mercury." Opp. at 5. FDA has allegedly caused a burden on this duty by "creating a vacuum of information," which has the effect of "stopping consumers in his state from learning information about mercury." Id. at 6. Plaintiffs further assert that this alleged injury will be redressed when FDA classifies EAADM because it will permit "Bender to have before him, or deduce from the decision, information" so

4

that "he can, with confidence, properly advise the Governor, the Legislature, and the people." Id.

Mr. Bender's informational injury claims must fail because he has no judicially enforceable right to compel FDA to provide the specific information that he seeks. Am. Farm Bureau, 121 F. Supp. 2d at 99. Mr. Bender also alleges that a large part of his injury arises from the information that he lacks due to FDA's refusal to do an Environmental Assessment. Bender Aff. ¶ 6. In addition to the reasons discussed above, this informational injury claim must also fail because this Circuit has clearly held that plaintiffs lack standing to bring NEPA claims when, as here, there has been no final agency action under the APA. Karst Environmental Education and Protection, Inc. v. EPA, 475 F.3d 1291, 1297 (D.C. Cir. 2007) ("NEPA claims must be brought under the APA and allege final agency action"). Mr. Bender has failed to allege final agency action under the APA, and he therefore lacks standing to assert an informational injury relating to his environmental claims.

Mr. Bender has also failed to show that his alleged injury was caused by FDA. He has failed to explain how "FDA inaction and FDA silence" renders him "unable to report accurately, or advise wisely, the Governor, the Vermont Legislature, and the citizens of my state on the impact of dental amalgam to the mercury problem." Bender Aff. at ¶ 6. FDA does not interfere with Mr. Bender's ability to obtain or disseminate information about dental amalgam – indeed, plaintiffs' brief touts his publications on the subject. Opp. at 5 n.5. The Committee of which Mr. Bender is a member publishes an annual report about mercury without any FDA interference. See Vermont Advisory Committee on Mercury Pollution, available at http://www.mercvt.org/acmp/index.htm. Moreover, Mr. Bender presented his views at FDA's 2006 Joint Panel meeting. See U.S. Mem. at 13; FDA Docket No. 2006N-0352 (C164 & C835).

Notably, in the 2002 proposed rule (for which FDA has recently reopened the comment period, see 73 Fed. Reg. 22,877 (Apr. 28, 2008)), FDA proposed ingredient labeling that would specify the presence of mercury – not conceal it or reveal only zinc – as plaintiffs contend. See 67 Fed. Reg. 7620, 7627 (Feb. 20, 2002). Thus, even if Mr. Bender had a cause of action for informational injury, he has not adequately alleged that FDA's actions or inactions have caused him any injury in that regard. Moreover, Mr. Bender's allegation with respect to how his alleged injury would be redressed is pure speculation, i.e., that a classification of EAADM will permit him to have – or "deduce" – information that he can use "with confidence" to give advice.

Mr. Bender also lacks standing because his claim that FDA's failure to classify dental amalgam interferes with his governmental duties, Opp. at 5, is not cognizable. See Alaska Legislative Council v. Babbitt, 181 F.3d 1333, 1337-38 (D.C. Cir. 1999). Although plaintiffs attempt to distinguish Alaska Legislative Council on the ground that it only applies to state legislators, Opp. at 4, the principles announced in that case apply to Mr. Bender. There, the legislators sued in both their official and individual capacities, 181 F.3d. at 1335, and the court held that they had not alleged sufficient injury in either capacity. As legislators, they had not alleged deprivation "of something to which they are personally entitled." Id. at 1337. While their allegations of injury as individuals were "perhaps conceivable," the Court held "that is not enough," and: "Pleadings must be more than 'an ingenious academic exercise in the conceivable.'" Id. at 1339, quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 688 (1973). In addition, because Mr. Bender is not suing in his official capacity as a member of the Vermont Advisory Committee, his claims of injury that FDA's activities interfere with his official duties ring particularly hollow.

6

Further, as pointed out in the government's initial memorandum, Mr. Bender lacks prudential standing because his activities are not within the zone of interests meant to be protected by the FDCA. U.S. Mem. at 19. Mr. Bender does not rebut this point; in fact, both the complaint and his affidavit make clear that the "advice" he provides pertains to mercury pollution, and not to the classification of EAADM. Compl. at 4; Bender Aff. ¶¶ 6, 7.

Plaintiffs argue that the more "apt" precedents are the cases challenging the Brady gun law, in which state and local officials were required to conduct background checks on potential handgun buyers. Opp. at 4-5. However, in the case cited by plaintiffs, the court held that the law "imposes administrative burdens," and "compels action by state and local officials. . . ." Frank v. United States, 78 F.3d 815, 823-24 (2d Cir. 1996), vacated, 521 U.S. 1114 (1997). Here, by contrast, the FDA has imposed no burdens on Mr. Bender, nor has it compelled any action on his part.

### 2. PLAINTIFF KAREN JOHNSON

Plaintiffs concede that Ms. Johnson – a state legislator – "probably" does not have standing under Alaska Legislative Council. Opp. at 4. For all of the reasons stated in the government's initial memorandum and herein, her claim should be dismissed for lack of standing.

### 3. PLAINTIFF KAREN PALMER

Karen Palmer alleges that she has suffered injuries from exposure to mercury both as a patient (Palmer Aff. ¶ 2) and as a dental hygienist (id. at ¶ 1). She alleges that FDA caused these injuries in two ways. First and foremost, she alleges an informational injury, "because the FDA does not report the accurate science on this neurotoxin, [and] does not properly classify or warn

7

about the mercury in mercury fillings, it is very difficult for me to receive the medical care I need to fully recover," because doctors do not know how to treat her condition.  Id. ¶ 11.  Indeed, plaintiffs concede that the only way to remedy her alleged injuries is through "promulgating accurate information."  Opp. at 9.  For all of the reasons stated above, however, Ms. Palmer has no standing to bring an informational injury claim against FDA.

Also, it is entirely speculative whether FDA's activities with respect to the classification of EAADM have caused her alleged injuries and whether classification would remedy them.  Indeed, because her claims explicitly depend on the actions and knowledge of intervening third parties (doctors), she cannot establish that FDA caused her injuries or that they would be redressed by classification.  See Palmer Aff. ¶¶ 11, 12; Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (plaintiffs must demonstrate that "it is substantially probable . . . that the challenged acts of the defendant, not of some absent third party, will cause [their] particularized injury").  FDA does not interfere with the medical community's access to information about dental amalgam, and in fact invites open, public discussions about that subject.  See 71 Fed. Reg. 16,582 (Apr. 3, 2006) (convening a joint panel to discuss recent scientific literature on dental amalgam).  To the extent she is speculating that FDA may impose future restrictions upon the availability of the device, Palmer Aff. ¶ 12, her allegations must fail for the same reasons as stated in federal defendants' motion to dismiss.  U.S. Mem. at 24-27.  Even if FDA were to place EAADM into class III – which is speculative – her past injuries would not be redressed by that future action, because EAADM would not be removed from the market.  Moreover, regardless of FDA's actions, she would be unlikely to consent to receive mercury fillings in the future.  Cf. Animal Legal Defense Fund, 23 F.3d at 500 (no "impending" injury

8

"when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control").

### 4.    PLAINTIFF CORRIE CROWE

Corrie Crowe, a dentist, similarly alleges that she and her child have suffered from extensive physical injuries related to her occupational exposure to mercury.  While her claims of injury, including two miscarriages, certainly warrant sympathy, she has not stated a claim that this Court can review.  Like the other plaintiffs, she characterizes her injury as an informational one:  "if other dentists, as well as their patients, were to be warned through proper FDA classification . . . mainstream doctors would be educated. . . ."  Crowe Aff. ¶ 19.  For the reasons stated above, however, the FDCA provides no judicially enforceable right to the information that she seeks.  Furthermore, FDA cannot be held responsible for the knowledge of third parties.  See Florida Audubon Soc'y, 94 F.3d at 663.

In addition, plaintiffs have not shown how Ms. Crowe's alleged injuries were caused by FDA or that the classification of EAADM would redress these alleged injuries.  In terms of redressability, plaintiff Crowe asserts that if "mainstream doctors" were "educated," "I would more easily and affordably be[] able to obtain my own and my son's extensive medical treatment (e.g., through insurance reimbursement), I would cease to be stigmatized for my accurate medical knowledge, and I would be able to provide safer care to my patients."  Crowe Aff. ¶ 19.  Dr. Crowe has provided no credible basis for these speculations, which depend upon many factors unrelated to FDA's classification of FDA.  Furthermore, Dr. Crowe has not and cannot allege that FDA has interfered with her own decisions regarding the quality of care she provides to her patients.  For all of these reasons and the reasons stated in the government's initial memorandum,

9

Dr. Crowe has failed to adequately allege that she has standing to challenge FDA's actions regarding EAADM.

### 5.    PLAINTIFF R. ANDREW LANDERMAN

R. Andrew Landerman, also a dentist, alleges that he has spent considerable sums of money to minimize exposure to mercury in his dental practice.  Landerman Aff. ¶¶ 4-6.  He states his belief that "if FDA had done more to recognize the burden that dentists suffer because they have to handle mercury, either by mandating industry-wide controls, or by acknowledging that dental mercury is an unjustified environmental pollutant and has no place in dentistry," he would not have to spend so much money to protect himself from mercury exposure.  Id. ¶ 7.

Plaintiffs assert:  "No doubt, FDA has been a causative factor in Dr. Landerman's injuries."  Opp. at 10.  Plaintiffs fail, however, to explain how FDA's activities regarding EAADM are responsible for Dr. Landerman's independent decisions to spend money to provide a certain standard of safety for his dental office.  Moreover, even if FDA were to classify EAADM into class III, EAADM would not be removed from the market, and would still be available for use in dentistry.  U.S. Mem. at 26-27.  Further, even if EAADM were removed from the market, patients with existing fillings would still seek dental care from Dr. Landerman.  Thus, his claims that he is economically harmed by expenses related to treating these patients – expenses that he would make regardless of when and how FDA formally classifies the device – are not redressable by any action that FDA may take to classify EAADM.

To the extent that Dr. Landerman alleges that FDA's classification would mandate industry-wide controls, Landerman Aff. ¶ 7, Dr. Landerman does not explain how such controls would remedy his alleged injuries.  If the controls he refers to are labeling controls to provide

additional information, Dr. Landerman lacks standing to bring such a claim for informational injury, for the same reasons stated above.

### 6.    PLAINTIFF LINDA BROCATO

Plaintiffs' opposition makes clear that Ms. Brocato's injuries are informational injuries; i.e., "her right to informed consent was violated by dentists and doctors – whose right to informed consent was in turn violated [] by FDA." Opp. at 8. This alleged injury occurred because FDA has "conspir[ed] to keep a wrapper over the truth. . . ." Id. at 9. For all of the reasons stated above, however, Ms. Brocato has no standing to raise claims of informational injury.

Nor does Ms. Brocato assert a basis for concluding that FDA caused her alleged injuries or that classification of EAADM would redress them. Plaintiffs speculate that if this Court were to grant relief, her "efforts to find informed professionals" for medical care "would be profoundly aided." Id. at 8-9. Such speculation is an insufficient basis for standing. Moreover, because Ms. Brocato would be unlikely to consent to receiving mercury fillings in the future, no action that FDA may take regarding classification of EAADM would redress her past injuries. Cf. Animal Legal Defense Fund, 23 F.3d at 500.

### 7.    PLAINTIFF ANITA VAZQUEZ TIBAU

Plaintiffs make no argument regarding plaintiff Tibau, and did not submit an affidavit in support of her standing in this case. For all of the reasons stated in the government's initial memorandum and herein, she does not have standing to challenge FDA's actions regarding EAADM.

**B.      THE ORGANIZATIONAL PLAINTIFFS LACK STANDING**

Plaintiffs assert that three organizations have standing.[1]  Plaintiffs' basic contention is that the FDA, by not classifying EAADM, has frustrated the objectives of these organizations, all of whom have as their objective to end the use of dental mercury.  Compl. at 3; Opp. at 10-15. As explained in greater detail below, it is alleged that the principal manner in which FDA has frustrated these objectives is to cause the organizations to spend more time educating and advocating with respect to dental mercury.  However, the case law is clear that this type of injury is insufficient to establish organizational standing.  In Am. Farm Bureau, this Court rejected a claim of an organization that it suffered injury "as a result of having to expend funds on 'public education and outreach' to combat 'misinformation. . . .'" 121 F. Supp. 2d at 99.  "An organization's budgetary choices do not provide adequate grounds for standing."  Id. at 101. Similarly, this Court rejected standing when plaintiffs argued "that they have suffered an injury because defendant's conduct has forced them to divert resources from other priorities. . . ."  Long Term Care Pharm. Alliance v. UnitedHealth Group, Inc., 498 F. Supp. 2d 187, 191 (D.D.C. 2007).  "Were an association able to gain standing merely by choosing to fight a policy that is contrary to its mission, the courthouse door would be open to all associations."  Id. at 192; see also Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1429 (D.C. Cir. 1996) ("a conflict between a defendant's conduct and an organization's mission is alone insufficient to

─────────────────

[1] Plaintiffs make no argument regarding plaintiff Oregonians for Life, see Compl. at 3, and did not submit an affidavit in support of its standing in this case.  For all of the reasons stated in the government's initial memorandum and herein, this organization does not have standing to challenge FDA's actions regarding EAADM.

establish Article III standing.  Frustration of an organization's objectives is the type of abstract

concern that does not impart standing. . . .  Individual persons cannot obtain judicial review of

otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then

suing on behalf of the newly formed and extremely interested organization.") (internal quotation

marks and citation omitted); Nat'l Taxpayers Union, Inc. v. United States,, 68 F.3d 1428, 1433,

1434 (D.C. Cir. 1995) ("The allegations that Section 13208 has 'frustrated' NTU's objectives is

the type of abstract concern that does not impart standing." * * *  "The impact of Section 13208

upon NTU's programs, such as its educational and legislative initiatives, also does not constitute

injury in fact.").

In addition, it is highly speculative that FDA has caused these alleged injuries or that

FDA's classification of EAADM will redress any of the allegations of injury.  The current FDA

proposal is that EAADM be classified as a class II device.  Even if it were classified into class

III, it would remain on the market.  See U.S. Mem. at 6-7.  Thus, it is "unadorned speculation"

that the classification of EAADM would have any effect on plaintiff organizations' activities.

Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 44 (1976).  Nor do plaintiffs show

that the organizations are within the zone of interests of the FDCA:

> The principle established by our decisions, then, is that to come within the zone of
> interests of the statute under which suit is brought, an organization must show
> more than a general corporate purpose to promote the interests to which the
> statute is addressed.

Animal Defense Fund, 23 F.3d at 503.  For these reasons, in addition to those discussed below,

plaintiff organizations lack standing.

### 1.    MOMS AGAINST MERCURY

Plaintiffs allege that Moms Against Mercury has organizational standing in its own right. It alleges that it was formed to inform people about the dangers of mercury from thimerosol, but that it has been injured because it has had to spend more time telling its membership that amalgam contains mercury. Opp. at 11. It is alleged that this injury will be redressed by a favorable ruling because "Moms will no longer have to inform women about the presence of mercury in amalgam." Id. Plaintiffs portray Moms' injury largely as an informational one: "Moms has spent more time telling its membership what FDA will not." Id. As discussed above, plaintiffs do not have standing to assert such a cause of action under the FDCA.

Even if this were not the case, however, these allegations still fail to establish standing. The most obvious reason is lack of redressability: it is wholly speculative whether FDA's classification decision will have any effect on Moms' activities that pertain to informing its members that EAADM contains mercury. See Nat'l Treasury Employees Union, 101 F.3d at 1430 (rejecting organization's standing, despite allegations that it would have to spend more funds to counter the challenged conduct, because of a lack of connection between the alleged injury and the conduct: "we are unsure whether NTEU's additional expenditure of funds is truly necessary . . . or rather is unnecessary alarmism constituting self-inflicted injury."). Nor has there been a sufficient showing that these alleged injuries were caused by FDA.

In addition, the fact that Moms has "spent more time" informing its members about EAADM is an insufficient injury. Am. Farm Bureau, 121 F. Supp. 2d at 99; Long Term Care Pharm. Alliance, 498 F. Supp. 2d at 191. See also Nat'l Taxpayers Union, 68 F.3d at 1434

14

("NTU's self-serving observation that it has expended resources to educate its members and others regarding Section 13208 does not present an injury in fact." Similarly, in Ctr. For Law and Educ. v. Dep't of Educ., 396 F.3d 1152 (D.C. Cir. 2005), this Circuit held that the organizations' claim that the government activity forced them to change lobbying strategies to a "more costly" type of lobbying "fails to bind the challenged conduct to actual injury." Id. at 1161. On this issue, this Court in Long Term Care Pharm. Alliance distinguished the principal case relied on by plaintiffs, Havens Realty Corp., by noting that in Havens the defendants' activities "directly impeded" plaintiffs' activities, which is more than "diverting resources" or an "abstract conflict." 498 F. Supp. 2d at 191-92. Similarly, the Court in Ctr. For Law and Educ. distinguished Havens: "Here, the only 'service' impaired is pure issue-advocacy the very type of activity distinguished by Havens." Id. at 1162. The other two cases relied on by plaintiffs, Opp. at 11 (citing Spann v. Gerstein, 899 F.2d 24 (D.C. Cir. 1990), and Abigail Alliance v. Eschenbach, 469 F.3d 129 (D.C. Cir. 2006), rev'd on other grounds en banc, Abigail Alliance v. Eschenbach, 495 F.3d 695 (D.C. Cir. 2007)), were similar to Havens in that they found an direct impairment of the organizations' programs. 899 F.2d at 27-29; 469 F.3d at 132-33.

Plaintiffs also allege that Moms has standing because one of its members, Karey Williams, has standing. Opp. at 11-12. As pointed out in the government's initial memorandum, plaintiff organizations made no allegations in the complaint about injuries to their members. U.S. Mem. at 24. Defendants also pointed out that plaintiffs had made no showing that they are "traditional membership organizations," or "functionally equivalent" to such organizations. Id. at 24 n.9, citing Wash. Legal Foundation v. Leavitt, 477 F.Supp. 2d 202 (D.D.C. 2007). Despite this roadmap, plaintiff organizations still have not made allegations regarding their members

sufficient to gain standing.  In <u>Wash. Legal Foundation</u>, plaintiff organization brought suit on

behalf of individuals that it claimed were "members" but who were not members as defined in its

Articles of Incorporation.  <u>Id.</u> at 208.  The Court noted that the organization might still have

standing – even with no members – if it were the functional equivalent of a traditional

membership organization:

> Three main characteristics must be present for an entity to meet the test of
> functional equivalency:  (1) it must serve a specialized segment of the community;
> (2) it must represent individuals that have all the "indicia of membership"
> including (i) electing the entity's leadership, (ii) serving in the entity, and (iii)
> financing the entity's activities; and (3) its fortunes must be tied closely to those
> of its constituency.

<u>Id.</u>; <u>see also id.</u> at 208-09 (organizations whose purported members do not perform these

functions lacked standing); <u>Ass'n of Am. Physicians and Surgeons</u>, 539 F. Supp. 2d at 14 n.1

(noting the lack of standing for organizations that are not "membership organizations.").

Plaintiffs do not allege that the members of Moms perform any of these functions.  For this

reason, Moms lacks standing on behalf of its members.

Even if plaintiffs made these allegations, the injuries alleged on behalf of Ms. Williams

are insufficient to establish standing.  Citing to a document that was before the Court of Appeals

and not this Court, plaintiffs allege that Ms. Williams suffers from "acute gastrointestinal,

thyroid, and neurological problems" due to her fillings.  Opp. at 12.  There is no indication that

these injuries were caused by the lack of formal classification of EAADM by FDA.  Moreover,

plaintiffs concede that FDA action would not remove her fillings, but allege that her injury would

be redressed because "<u>FDA action calling for additional controls, per the panel's</u>

<u>recommendation, would ease the reluctance of dentists and insurance companies like hers to</u>

remove fillings where there is concern that the continued presence of mercury fillings may harm her or her child." <u>Id.</u> (emphasis in original).  This is wholly speculative.  When FDA classifies EAADM, there is no certainty what, if any, "special controls" may be applicable, much less whether any such special controls would "ease the reluctance of dentists and insurance companies like hers to remove fillings."  <u>See</u> <u>Simon v. Eastern Kentucky Welfare Rights Org.</u>, 426 U.S. at 41-42 ("the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). In addition, "unadorned speculation will not suffice to invoke the federal judicial power."  <u>Id.</u> at 44.

## 2.    CONNECTICUT COALITION FOR ENVIRONMENTAL JUSTICE

Plaintiffs allege that the Connecticut Coalition for Environmental Justice ("CCEJ") has organizational standing because it has had to "divert its energies from addressing other forms of pollution to fighting the release of dental mercury into 'local urban environments.'" Opp. at 12-13.  The affidavit of Mark Mitchell states that CCEJ has "had to divert a considerable amount of resources to fighting the Department of the Environment's refusal to consider mercury from dental amalgam as the type of mercury that was contemplated under the zero-mercury laws."  <u>Id.</u> ¶ 5.  Thus, according to this affidavit, the Department of the Environment has caused this alleged injury, not FDA.

CCEJ's efforts have allegedly included surveys, advocacy for hearings, educational efforts, and petitioning the state government.  <u>Id.</u>  It is alleged that these injuries would be redressed as follows:  "If FDA would only follow the FDA Panels' recommendation, or do an

17

Environmental Assessment, public knowledge would grow and use would decline dramatically. Soon, substantially less mercury would be in Connecticut wastewater." Opp. at 13. Again, the most obvious flaw in CCEJ's standing is redressability: It is pure guess-work whether FDA classification of EAADM would cause the use of the device to "decline dramatically" or that there would be less mercury in "Connecticut wastewater." See Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. at 44. Also, for the same reasons stated above with respect to Moms Against Mercury, the type of harm alleged by CCEJ (i.e., the "diversion of resources") is insufficient injury to invoke organizational standing. See Am. Farm Bureau, 121 F. Supp. 2d at 99; Long Term Care Pharm. Alliance, 498 F. Supp. 2d at 191; Nat'l Taxpayers Union, 68 F.3d at 1434; Ctr. For Law and Educ., 396 F.3d at 1161. In addition, there has not been a sufficient showing that these alleged injuries were caused by FDA. Further, the focus of CCEJ's injuries is pollution, which is not in the zone of interests protected by the FDCA. Therefore, CCEJ lacks prudential standing as well. See U.S. Mem. at 19.

CCEJ also alleges that it has representational standing because "four of its members" would have chosen alternatives to amalgam had they been aware that their fillings contain mercury. Opp. at 13. Just as was the case with Moms, plaintiffs have made no showing that CCEJ is a "traditional membership organization," or "functionally equivalent" to such an organization. For this reason, it does not have standing on behalf of its members.

Even if such a showing had been made, however, the injuries CCEJ alleges on behalf of four of its members are insufficient to establish standing because they were not caused by FDA, nor are they redressable by this Court. As stated in the government's initial memorandum, plaintiffs' theory of causation depends on their unsupported speculation that FDA would have

18

classified EAADM differently than its individual components, dental mercury and amalgam alloy, if FDA had classified EAADM earlier. U.S. Mem. at 24-24. It is far from clear with respect to these four individuals whether they would have chosen alternatives to EAADM if FDA had classified EAADM earlier. Moreover, it is plain that these alleged injuries would not be redressed by the classification of EAADM. Plaintiffs assert that the CCEJ members would "benefit" from "(1) having FDA comply with its mission of protecting the public health by regulating devices in a timely manner; (2) seeing to it that less mercury is introduced into the local environment; and (3) enjoying a more precautionary, and proactive regulatory stance by FDA – one that makes getting treatment for mercury fillings easier." Opp. at 13. It is wholly speculative that classification of EAADM will "see to it" that less mercury is introduced into the local environment (particularly because it would remain on the market even if it were placed into class III), or that such classification would make "getting treatment for mercury fillings easier" – a result that would depend largely upon the actions of third parties, such as dentists and insurance companies.

### 3.    CONSUMERS FOR DENTAL CHOICE

Consumers for Dental Choice alleges that its injury is "the time, energy, and money spent . . . on the issue of having FDA comply with its statutory mandate. . . ." Opp. at 13. Plaintiffs allege is that FDA's action has caused Consumers for Dental Choice "to divert significant attention from its efforts to ensure that different states comply with their laws and regulations respecting mercury generally, or specifically in regard to precautions in dental offices, the treatment of wastewater, etc." Opp. at 15. As shown for Moms Against Mercury and CCEJ, this type of harm is insufficient to invoke organizational standing. See Am. Farm Bureau, 121 F.

19

Supp. 2d at 99; Long Term Care Pharm. Alliance, 498 F. Supp. 2d at 191; Nat'l Taxpayers

Union, 68 F.3d at 1434; Ctr. For Law and Educ., 396 F.3d at 1161.  This is not the type of

"impairment" found to be sufficient for standing in Havens.  In addition, there is no indication

that classification of EAADM would redress these alleged injuries, or that FDA's activities

caused them in any way.

    For these reasons, Consumers for Dental Choice does not have standing.  In addition, the

time spent by a plaintiff to challenge the very conduct at issue in the case cannot be a basis for

standing.  Even plaintiffs' own authority recognizes this:  "[A]n organization is not injured by

expending resources to challenge the regulation itself; we do not recognize such self-inflicted

harm."  Abigail Alliance, 469 F.3d at 133; see also Long Term Care Pharm. Alliance, 498 F.

Supp. 2d at 192 ("Were an association able to gain standing merely by choosing to fight a policy

that is contrary to its mission, the courthouse door would be open to all associations.").  Because

this is the type of injury alleged by Consumers for Dental Choice, see Opp. at 13-15, it does not

have standing for this alternative reason.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER MOST OF PLAINTIFFS' CLAIMS, AND SOME OF PLAINTIFFS' ALLEGATIONS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

    Plaintiffs' lack of standing requires dismissal of the complaint in its entirety.  If the Court

were to conclude that plaintiffs have standing, however, most of their claims can be dismissed

for lack of subject matter jurisdiction or failure to state a claim.  Plaintiffs concede that this Court

has no subject matter jurisdiction over their claims made under 21 U.S.C. §§ 360g(a)(4) and

360g(a)(8).  Opp. at 15.  Plaintiffs assert – incorrectly – that their alleged causes of action under

21 U.S.C. §§ 351 and 352 are "fact questions."  Id.  Whether there is subject matter jurisdiction

over these allegations or whether they state a claim are legal questions.  The government

defendants have demonstrated why there is no jurisdiction over these allegations and why neither

states a cause of action.  U.S. Mem. at 30-31.  Because plaintiffs have not rebutted these points,

these two claims must be dismissed.  In addition, plaintiffs have not attempted to rebut the

reasons that there is no jurisdiction for their allegation under 21 U.S.C. § 393.  See U.S. Mem. at

32; Opp. at 17.  For this reason, too, this claim should be dismissed.

 The only allegation plaintiffs even attempt to support is their claim under 21 U.S.C.

§ 379o (which they assert is a NEPA claim).  This allegation must fail, however, because

plaintiffs have not alleged final agency action – indeed, their claim is that FDA has failed to act.

U.S. Mem. 31-32 (citing Pub. Citizen v. United States Trade Representative, 5 F.3d 549, 551-52

(D.C. Cir. 1993)).  Rather than contest that legal requirement – which they cannot do – plaintiffs

cherry-pick statements from two cases and present them to this Court with the suggestion that

plaintiffs can in fact get premature review of non-final agency action.  Neither of the cited cases,

however, supports that proposition.  Citing Foundation on Economic Trends v. Lyng, 943 F.2d

79, 89 (D.C. Cir. 1991), plaintiffs quote the following statement from the dissent:  "Withholding

judicial review until there is final agency approval of the proposed action would effectively

eliminate  judicial oversight of NEPA's procedural requirements."  Opp. at 16.  The majority

opinion, however, clearly held otherwise, and required dismissal of plaintiffs' complaint because

the plaintiffs lacked standing, also noting that they had "failed to identify final agency action" for

purposes of the APA.  943 F.2d at 86.  Plaintiffs also cite Robertson v. Methow Valley Citizens

Council, 490 U.S. 332, 349 (1989), asserting that FDA must assess potential harm before a

project is undertaken.  Opp. at 16.  In that case, the Court reversed the decision of the Ninth

Circuit that the Forest Service's EIS was inadequate.  No part of the Court's opinion has any

bearing on the question whether a plaintiff may obtain judicial review before the agency has

taken final action.  Rather, that question is settled law in this Circuit:  there is no such review.

See, e.g., U.S. Mem. at 31-32; Karst Environmental Education and Protection, Inc., 475 F.3d at

1297.[2]

In addition, as the federal defendants pointed out in their initial memorandum, 21 U.S.C.

§ 379o in fact clarifies that FDA's compliance with its regulations will constitute compliance

with NEPA, and does not provide an independent mechanism to challenge FDA's compliance

with NEPA.  U.S. Mem. at 32.  Plaintiffs do not even acknowledge their own failure to properly

allege a NEPA violation – let alone explain how they have alleged a NEPA violation – and their

claim can be dismissed solely on that ground.

Finally, plaintiffs seek to raise irrelevant factual issues relating to their NEPA-like claims,

asserting that FDA falsely claimed that it had considered environmental factors in its 2002

proposed rule but has since stated to Congress that it has no documentary evidence of that.  Opp.

at 16-17.  Although neither of these issues is relevant to this Court's consideration of plaintiffs'

NEPA-like claims, federal defendants note that FDA relied on an exclusion in 21 C.F.R.

§ 25.34(b) in its 2002 proposed rule, which categorically exempts classification decisions from

the requirement for an environmental assessment or an environmental impact statement if the

action does not increase the existing levels of the use of the device.  67 Fed. Reg. 7628.

---

[2]  Federal defendants stated in their motion to dismiss that this claim should be dismissed under Fed. R. Civ. P. 12(b)(1) as unripe because there has been no final agency action.  Karst, however, holds that such claims are properly dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Karst, 475 F.3d at 1297-98.  Regardless of the appropriate ground for dismissal, plaintiffs have unquestionably failed to allege the requisite final agency action.

Moreover, in a recent response to a Congressional request for documents regarding FDA's NEPA compliance, FDA produced its response to a citizen petition (not just the unanswered petition, as plaintiffs assert), which stated, in response to petitioner's request that FDA conduct an environmental assessment, that the Agency "could require" such an assessment if it were to take certain actions for dental amalgam, but noted: "At this time . . . no such actions have been taken." <u>See</u> Petition Response for Docket No. 93P-0424, at 3 (Oct. 31, 1997). Regardless, neither of these factual issues has any relevance to this Court's consideration of plaintiffs's claim that FDA has violated 21 U.S.C. § 379o.

Finally, plaintiffs argue that they have pled unreasonable delay. Opp. at 18. As stated in defendants' initial memorandum, defendants do not concede this point, but they do not contest it for purposes of this motion. U.S. Mem. at 33. The rest of plaintiffs' argument on this issue goes to the merits of this claim. Opp. at 18-22. These merits arguments are not relevant to the motion to dismiss. Defendants have addressed the unreasonable delay issue in responding to plaintiffs' motion for a preliminary injunction. U.S. Mem. at 36-44.[3]

---

[3] Although defendants do not here respond to plaintiff's arguments regarding the requested preliminary injunction, defendants take issue with the numerous derogatory comments plaintiffs direct toward FDA in their reply in support of their motion for preliminary injunction (<u>e.g.</u>, "philosopher-kings in Rockville," "abject callousness," "FDA disingenuously claims," "rogue bureaucracy," "false promises," "cruel move," "reprehensible feint," and "outrageous proposals." Pl. Reply to Opposition to Motion for Preliminary Injunction at 1, 4, 5, 6, 7. As demonstrated in their memorandum in opposition to plaintiffs' motion, the FDA's decisions regarding EAADM have been based on the best available science and, given the complex nature of the task assigned to it, have not been unreasonable. U.S. Mem. at 38-44.

## CONCLUSION

For the foregoing reasons and the reasons stated in the government's initial memorandum, the complaint should be dismissed.

Respectfully submitted,

Of Counsel:

THOMAS R. BARKER                     JEFFREY S. BUCHOLTZ
Acting General Counsel               Acting Assistant Attorney General

GERALD F. MASOUDI                    C. FREDERICK BECKNER III
Chief Counsel, Food and Drug Division  Deputy Assistant Attorney General

ERIC M. BLUMBERG                     EUGENE M. THIROLF
Deputy Chief Counsel, Litigation     Director
                                     Office of Consumer Litigation

WENDY S. VICENTE
Associate Chief Counsel

                                     _____/s/_____
U.S. Dept. of Health & Human Services  DRAKE CUTINI
Office of the General Counsel        Attorney
5600 Fishers Lane                    Office of Consumer Litigation
Rockville, MD 20857                  U.S. Department of Justice
(301) 827-7138                       P.O. Box 386
                                     Washington, D.C. 20044
Dated: May 12, 2008                  202-307-0044
                                     drake.cutini@usdoj.gov

24