## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOMS AGAINST MERCURY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:07-cv-02332 (ESH/JMF) |
| | ) | |
| ANDREW VON ESCHENBACH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF
## KAREN PALMER'S MOTION TO VACATE THE DISMISSAL OF HER CLAIMS

### INTRODUCTION

Eleven separate plaintiffs sued federal defendants in this action on December 28, 2007, seeking an order compelling the United States Food and Drug Administration ("FDA") to classify dental amalgam. On May 16, 2008, this Court held a hearing, and referred the parties to a settlement conference before Magistrate Judge Facciola on May 29, 2008. Ten days before that conference was held, Magistrate Judge Facciola issued an order requiring "parties with settlement authority . . . be available by phone for each and every settlement conference." (Order dated May 19, 2008, Dkt. No. 14). The government went to considerable effort to obey the terms of this order, conducting personal meetings with the Commissioner of Food and Drugs, with high level officials from the Department of Health and Human Services, and with representatives of the Office of Management and Budget. Defendants assumed that plaintiffs had similarly taken steps to participate at the mediation in compliance with the settlement authority requirements of the court order.

At that conference, senior FDA officials and counsel for the federal defendants reached an agreement with plaintiffs' counsel, Mr. Brown and Mr. Reeves, to classify dental amalgam by July 28, 2009. The parties also carefully negotiated line-by-line changes to the FDA website document concerning dental amalgam. These changes were an integral part of the negotiation and are incorporated in the settlement agreement. After reviewing the proposed changes to the website on May 30, 2008, Mr. Brown confirmed plaintiffs' agreement with counsel for the federal defendants by (1) executing a settlement agreement (Palmer Ex. D); (2) executing a stipulation to voluntarily dismiss this case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii); and (3) filing that stipulation with this Court, which automatically ended the lawsuit (Dkt. No. 16). Thereafter, FDA updated its website with the agreed-upon language, and has taken action to proceed in accordance with the specified timeframe for classifying dental amalgam.

Alone among the eleven plaintiffs, Ms. Karen Palmer now challenges the voluntary dismissal of this case. She states that she is not bound by the settlement agreement because Mr. Brown did not have authority to enter into that agreement on her behalf – even though she has already benefitted from the FDA's good-faith performance under that agreement and simply seeks to see if she can gain improvements to the deal that was already struck between the parties by attempting to reopen this case. Her motion to vacate the dismissal of this case should be denied. Ms. Palmer has not met her burden to demonstrate that Mr. Brown acted without authority in agreeing to the settlement on her behalf, nor are there any exceptional circumstances that would justify vacating the stipulated dismissal.

**ARGUMENT**

The Rule 41(a)(1)(A)(ii) dismissal in this case was voluntary and self-executing.  The stipulation of dismissal did not incorporate the terms of the parties' settlement agreement.  In such instances, courts refrain from interfering with disputes concerning the contractual arrangement that led to the settlement.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) (holding that district court lacked jurisdiction to enforce the parties' settlement agreement that was not incorporated into the Rule 41(a)(1)(ii) dismissal).[1]  Indeed, such dismissals by settlements should be encouraged – not undermined by plaintiffs who have later misgivings about their terms.  *See, e.g., Greene v. Rumsfeld*, 266 F. Supp. 2d 125, 135 n.7 (D.D.C. 2003) ("Settlement agreements are highly favored by the courts.") (citing *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1015 (D.C. Cir. 1985)).

In limited circumstances, however, some courts have used Rule 60(b)(6) to vacate a stipulated dismissal.  *See Kokkonen*, 511 U.S. at 378.  Rule 60(b) provides that a party can obtain relief from a "Final Judgment, Order, or Proceeding," for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is

---

[1]  Rule 41(a)(1) was amended on December 1, 2007.  The substance of the previous version (Rule 41(a)(1)(ii)) discussed in *Kokkonen* was recodified as Rule 41(a)(1)(A)(ii).  The Advisory Committee Notes for the 2007 amendments states that the changes to Rule 41 "are intended to be stylistic only."

no longer equitable; or

(6) any other reason that justifies relief.

Courts only resort to vacating a judgment under Rule 60(b)(6) when there are "extraordinary" circumstances. *Ackermann v. United States*, 340 U.S. 193, 200, 202 (1950). Courts in this Circuit have used Rule 60(b)(6) to either vacate a voluntary dismissal (in circumstances not present here) or consider doing so. *See Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987) (holding that Rule 60(b)(6) can be used to vacate a second voluntary dismissal under Rule 41(a)(1)(i) that had operated as an adjudication on the merits); *Boehm v. Office of Alien Property*, 344 F.2d 194 (D.C. Cir. 1965) (affirming denial of motion to vacate voluntary dismissal because there was no showing of extraordinary circumstances). Federal defendants have found no authority in this Circuit for vacating a voluntary dismissal based on a party's assertion that the attorney lacked authority to enter into the settlement that resulted in the dismissal.

For those circuits that have used Rule 60(b)(6) in considering whether to vacate a voluntary dismissal based on an assertion that the attorney did not have authority to enter into a settlement, the party seeking to set aside the stipulation bears a "heavy burden" to undo the settlement. *See Larson v. Heritage Square Assocs.,* 952 F.2d 1533, 1537 (8th Cir. 1992) (affirming denial of Rule 60(b) motion, stating that "an attorney is presumed to possess authority to act on behalf of the client," and that a party "must sustain 'a heavy burden to establish that [his] attorney acted without any kind of authority in agreeing to the entry of judgment'") (quoting *Surety Ins. Co. v. Williams*, 729 F.2d 581, 582-83 (8th Cir. 1984)); *Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184 (10th Cir. 1985) (affirming denial of Rule 60(b) motion based on

-4-

defendant's claim that her attorney lacked authority to sign a stipulation on her behalf). Thus, if this Court determines that it will consider the merits of Ms. Palmer's motion to set aside the stipulation,[2] it should not upset the dismissal in this case unless it finds that Ms. Palmer has shown extraordinary circumstances justifying such relief. Ms. Palmer's later regrets about the settlement are not extraordinary circumstances.

## I.    Mr. Brown Possessed Actual Authority to Dismiss This Case.

Federal courts in the District of Columbia adopt local District of Columbia law when determining whether an agent has authority to act on behalf of a principal. *Makins v. District of Columbia*, 277 F.3d 544, 548 (D.C. Cir. 2002). The D.C. Court of Appeals relies on the Restatement of Agency to determine whether an agent has the authority to enter into a binding agreement on behalf of the principal. *See, e.g., Makins v. District of Columbia*, 861 A.2d 590, 593 (D.C. 2004); *Sigal Constr. Corp. v. Stanbury*, 586 A.2d 1204, 1218 (D.C. 1991). "Actual 'authority,' according to the Restatement's definition, means that the agent has the power 'to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him.' Restatement (Second) of Agency § 7." *Makins*, 277 F.3d at 548; *see also Greene*, 266 F. Supp. 2d at 137 (observing that plaintiff's attorney had actual authority to enter into a binding agreement, thereby rejecting plaintiff's assertion that a final agreement had never been reached). Actual authority "is scrutinized under a 'reasonableness' standard and 'can be created by written or spoken words or other conduct of the principal, which reasonably interpreted, causes the agent to believe that the principal desires him so to act on the

---

[2] Ms. Palmer's motion to vacate cites no specific authority for setting aside a stipulated dismissal. Rule 60(b) appears to be the only rule under which this could be accomplished.

principal's account.'" *Evans v. Skinner*, 742 F. Supp. 30, 32 (D.D.C. 1990) (quoting

Restatement (2d) of Agency § 26); *see also Greene*, 266 F. Supp. 2d at 136 ("The parties' acts at

the time of the making of the contract are also indicative of a meeting of the minds.") (quoting

*Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995)).  Actual authority may be expressly made in

writing, or implied from the circumstances.  *See* Restatement (3d) of Agency § 2.01, Comment b

(2006) ("'Implied authority' is often used to mean actual authority either (1) to do what is

necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to

act in a manner in which an agent believes the principal wishes the agent to act based on the

agent's reasonable interpretation of the principal's manifestation in light of the principal's

objectives and other facts known to the agent."); *Ruffin v. Temple Church of God in Christ, Inc.*,

749 A.2d 719, 722-23 (D.C. 2000) (finding implied authority based on circumstances of

relationship).  The relevant inquiry for actual authority focuses on the time that the agent acts.

*See* Restatement (3d) of Agency § 2.02, Comment e (2006).

     The exhibits provided by the remaining plaintiffs in their opposition brief, filed June 26,

2008, demonstrate that Mr. Brown had actual authority to enter into the settlement agreement on

Ms. Palmer's behalf.  The contract between Mr. Brown and Ms. Palmer shows that Ms. Palmer

understood that, if she were agreeable to Mr. Brown's representation of her, that she "must be

prepared to settle the case [with] something less [than a ban on mercury fillings], if it moves us

substantially toward that goal and in taking into consideration our own limited resources."  Pl.

Ex. 4.[3]  Ms. Palmer also clearly knew that Mr. Brown was attending a mediation on May 29,

---

[3] The exhibits filed on June 26, 2008, by the plaintiffs other than Ms. Palmer are denoted as "Pl. Ex."

2008, on her behalf.  By email on May 28, 2008, she wished him "best of luck!" and stated that she "Can't wait to hear all about it!  You and Bob [Mr. Reeves] can't lose!  Glad you both will be there to support one another!"  Pl. Ex. 5.

Following the mediation, Mr. Brown communicated the terms of the settlement via email to Ms. Palmer and other plaintiffs on Friday, May 30, 2008, at 8:28 p.m.  Pl. Ex. 1.  This message clearly set forth the timeline within which FDA agreed to classify dental amalgam (by July 28, 2009), and it set forth specific details about the changes that would be made to FDA's website. *Id.*  At the end of his message, Mr. Brown stated "If you have objections, call me right away." *Id.*  Mr. Brown also called Ms. Palmer personally on Saturday, May 31, to convey information about the settlement, as she acknowledged in an email she sent to Mr. Brown on June 2, in which she endorsed the settlement in gushing terms.  Pl. Ex. 1.  On Sunday, June 1, Mr. Brown filed the stipulation of dismissal in this Court, which automatically terminated the case.

The exhibits provided by the remaining plaintiffs demonstrate that Mr. Brown contacted Ms. Palmer on May 30 with details about the settlement – including the specific time-frame that is apparently the only aspect of the settlement agreement that she now challenges.  *See* Motion to Vacate at 4 ("Ms. Palmer would have agreed to no more than three months for the completion of the classification process.").  Her favorable responses to Mr. Brown during the relevant timeframe show in unequivocal terms that Mr. Brown had actual authority to settle the case and file the stipulation of dismissal on her behalf.

Her later reconsideration was simply too late.  None of the documents indicating Ms. Palmer's misgivings about the settlement, and her desire to obtain more relief from the government, undermine Mr. Brown's authority to dismiss the case on Sunday, June 1, 2008.

Indeed, she ratified the agreement twice on Monday June 2.  At 11:41 a.m., Ms. Palmer responded to his message (apparently to a group of people), stating, "Now, let's see how the ADA scrambles ie; damage control.  (the FDA is their "boss") Stay tuned!  Very, very exciting! This is what keeps me going, truly!"  Pl. Ex. 2.  Later on June 2, at 12:27 p.m., she affirmatively responded directly to Mr. Brown in a manner that can only be construed as a complete endorsement of the settlement:  "How great this is!!  Brilliant, are you!  Thank you for the phone call Sat. Afternoon, really appreciate it!!  AND for allowing me to be a small part of it!!"  Pl. Ex. 1.

It was not until later that afternoon that Ms. Palmer expressed her doubts about the settlement.  By that time, however, based on Mr. Brown's reasonable assurance of Ms. Palmer's consent from his earlier communications with her, this case had been dismissed by stipulation. Ms. Palmer stated, "I can't help but wonder, if there wasn't an opportunity to have had this resolved before July 2009," and, "I want to talk with you about my concerns ASAP and hope and pray it is not to [sic] late to move this process along for those already affected and for all the future, unsuspecting patients/dental staff everywhere."  Palmer Ex. B.  These statements show that Ms. Palmer understood that she was likely too late in raising her objections, as indeed she was.

This set of facts differs starkly from the case relied upon by Palmer, *Makins*.  In that case (as described in the D.C. Circuit opinion that certified a question about apparent authority to the D.C. Court of Appeals), the plaintiff asserted that she had never given her attorney authority to settle without a provision for reinstatement to her job, and that she had not shown any sign of assent to the settlement agreement that had been reached by her attorney without that provision.

-8-

277 F.3d at 545-46. In addition, unlike Ms. Palmer and Mr. Brown, the plaintiff had no written retainer agreement with her attorney. *Id.* at 545. The D.C. Court of Appeals did not address the issue of actual authority, noting that the district court had "assumed *arguendo* that [the lawyer] did not have actual authority to settle the case short of reinstatement." 861 A.2d at 592-93.[4] By contrast, here the documents provided by Mr. Brown show clearly both that Mr. Brown had express, written prior authority to settle the case, and that Ms. Palmer had given her assent to the settlement at the time that Mr. Brown took action to dismiss this case. Pl. Exs. 1-2, 4. She also ratified her assent in subsequent messages. Pl. Exs. 1-2. These facts establish beyond a doubt that Mr. Brown had actual authority (both express and implied) to dismiss the case on her behalf. Her belated assertions otherwise are belied by this documentary evidence.

## II.    This Court Should Balance the Equities and Deny the Motion

In *Randall*, in determining whether Rule 60(b)(6) should apply to vacate a voluntary dismissal, the D.C. Circuit evaluated whether such an order would unduly prejudice the defendant. *Randall*, 820 F.2d at 1321. A similar balancing analysis should apply here, when federal defendants would be significantly prejudiced by allowing one plaintiff to undo the settlement, obtained through extensive negotiations with senior FDA officials, based on her later misgivings. Federal defendants agreed to settle this case with the clear understanding that all plaintiffs would be party to that settlement, and that the dismissal would remain in place so long as FDA met its obligations under the agreement. FDA has acted in accordance with the

---

[4] The case was later remanded to resolve the parties' evidentiary dispute about the attorney's actual authority, once it was determined by a certified question to the D. C. Court of Appeals that the attorney did not have apparent authority. *Makins v. District of Columbia*, 389 F.3d 1303, 1304 (D.C. Cir. 2004).

settlement agreement by changing the FDA's website and by establishing a schedule and

rearranging priorities and work assignments to meet the agreed-upon deadline.  By contrast,

plaintiffs here provided no consideration other than agreeing to dismiss the lawsuit.

Significantly, all of the other plaintiffs are satisfied with the settlement.  The balance of equities

strongly weighs in favor of denying her motion to vacate the stipulated dismissal.

## **CONCLUSION**

For the foregoing reasons, Palmer's motion to vacate dismissal of her claims should be

denied.

Respectfully submitted,

Of Counsel:

THOMAS R. BARKER                  GREGORY G. KATSAS
Acting General Counsel            Assistant Attorney General

GERALD F. MASOUDI                 C. FREDERICK BECKNER III
Chief Counsel, Food and Drug Division    Deputy Assistant Attorney General

ERIC M. BLUMBERG                  EUGENE M. THIROLF
Deputy Chief Counsel, Litigation  Director
                                  Office of Consumer Litigation

WENDY S. VICENTE
Associate Chief Counsel
                                  _____/s/_____
U.S. Dept. of Health & Human Services    DRAKE CUTINI
Office of the General Counsel     Attorney
5600 Fishers Lane                 Office of Consumer Litigation
Rockville, MD  20857              U.S. Department of Justice
(301) 827-7138                    P.O. Box 386
                                  Washington, D.C.  20044
Dated: June 30, 2008              202-307-0044
                                  drake.cutini@usdoj.gov